IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DOROTHY McANDREW, Individually :
and as the Administratrix of the Estate :
of RAYMOND MCANDREW, :
        Plaintiffs :
  v. :   3:CV-03-0872
  :   (JUDGE VANASKIE)
GARLOCK EQUIPMENT CO., :
BRAUNER EQUIPMENT COMPANY, :
        Defendants :

## MEMORANDUM

     In a comprehensive opinion issued in this products liability action on March 6, 2007 (Dkt. Entry 101), this Court denied in large measure the summary judgment motion of Defendant Garlock Equipment Company, the producer of thin wall steel tubing of the type that is at issue in this litigation. In denying summary judgment on various claims advanced in this matter, this Court found that opinions expressed by Plaintiff's expert, Mark Sokalski, P.E., afforded sufficient competent evidence to create genuine disputes of material fact. This Court also noted, however, that Garlock had not moved to exclude Mr. Sokalski's opinions pursuant to Daubert v. Merrill Dow Pharms., Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). (March 6, 2007 Memorandum Opinion Dkt. Entry 101 at 13.) Garlock has now moved for preclusion of Mr. Sokalski's opinions under Daubert and its progeny. (Dkt. Entry 128.) For the reasons that follow, Garlock's motion will be granted as to Mr. Sokalski's opinions that (a) the thin wall tubing at issue in this case

was, in fact, a Garlock product; (b) the thin wall tubing had a manufacturing or design defect; and (c) appropriate warnings accompanying the product would have informed the user of the need to wear a protective face shield.  Garlock's motion, however, will be denied with respect to the opinion that the product should have been accompanied by an appropriate warning concerning the potential explosion hazard posed by using external heat to remove hardened asphalt clogging the tubing.

## I. **BACKGROUND**

Raymond McAndrew, an experienced employee of the Dunmore Roofing Company, was injured severely on April 20, 2001, while attempting to "thaw" or "melt out" solidified asphalt that was clogging a section of thin wall steel tubing that had been used to transport heated asphalt from the ground to a roof at a Proctor & Gamble facility in Mehoopany, Pennsylvania.  Mr. McAndrew was applying heat to the metal tubing with a propane torch.  The injuries occurred when a vapor or gas pocket inside the steel tubing to which he was applying heat exploded.  Mr. McAndrew, who was standing about three feet from the tubing, sustained burns to his face and arms, along with injuries to his lungs.

Visual inspection of the tube revealed a rupture of 22.5 inches in length along a weld, starting at 27 inches from the end of the tubing.  Mr. Sokalski has opined that the incident pipe ruptured because "it was not stress relieved and then failed prematurely at a

weld related stress point." (Sokalski Report of October 13, 2005 at 14.)[1]  Mr. Sokalski bases this opinion on hydrostatic testing he conducted on an exemplar of Garlock's thin wall steel tubing.  The hydrostatic testing indicated that the exemplar withstood hydrostatic pressure of up to 5,830 psig before rupturing.  (Id. at 11.)  Estimating that the pressure within the incident pipe at the time of the explosion was substantially below 5,830 psig, Mr. Sokalski concluded that the thin wall tubing at issue "was not fully annealed[2] and failed prematurely along the seam weld."  (Id.)  Mr. Sokalski also opined that "Garlock failed to warn its users that an explosion potential exists and that appropriate personal protective equipment PPE, (full face-shield and full length fire resistant clothing) must be warn [sic] during the melt out."  (Id. at 13.)  These two opinions provide the support for Plaintiff's claims that Garlock was negligent and that its product was in a defective condition so as to support liability under § 402A of the Restatement (Second) of Torts and the implied warranty of merchantability.  Garlock assails these opinions, contending that they cannot withstand a Daubert analysis.

---

[1] Mr. Sokalski's October 13, 2005 Report is included as Exhibit "A" to Plaintiffs' Exhibits in Opposition to Garlock's Motion in Limine, Dkt. Entry 148-2.

[2] Annealing refers to the process by which metal is heated and then slowly cooled in order to reduce hardness and stress while enhancing its strength.  The Free Dictionary, available at http://www.thefreedictionary.com/annealed (last visited Feb. 7, 2008).  Mr. Sokalski appears to refer to an annealed tubing as one that has been "stress relieved."  (Sokalski Report at 14.)

## II. DISCUSSION

"Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." Kannankeril v. Terminix International, Inc, 128 F.3d 802, 806 (3d Cir. 1997). The Court's role as "gatekeeper" of expert opinions is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In addressing Garlock's summary judgment motion, this Court found that Mr. Sokalski possessed adequate qualifications to present competent expert evidence. (March 6, 2007 Memorandum Opinion Dkt. Entry 101, at 13-15.)  This conclusion remains applicable with respect to Garlock's Daubert challenge.  Although Mr. Sokalski has no experience in the commercial roofing industry and may not be familiar with the human factors discipline, the Rule 702 requirement that an expert have "specialized knowledge" is to be interpreted liberally, with the focus being on the expert's "'practical experience as well as academic training and credentials.'" Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (quoting Am. Tech. Res. v. United States, 893 F.2d 651, 656 (3d Cir. 1990).  Although Mr.

Sokalski's academic degree in chemical engineering may not be related directly to the subject of materials strength and mechanical engineering implicated by Mr. McAndrew's accident, he has extensive experience as a forensic engineer, with his work involving investigation of "gas, dust, and chemical explosions [and] over-pressurization explosions." (Sokalski Curriculum Vitae, included as Exhibit "B" to the Affidavit of Lauris Heyerdahl, Dkt. Entry 130-3.) Considered liberally, Mr. Sokalski's qualifications are sufficient to show that he has the requisite specialized knowledge to opine on the matters at issue here.

The dispositive issue as to each of Mr. Sokalski's opinions, therefore, is not whether he qualifies as an expert. Instead, the question is whether each opinion is "(1) . . . based on sufficient facts and data; (2) [the] product of a reliable methodology; and (3) demonstrate[s] a relevant connection between that methodology and the facts of the case." Jaasma v. Shell Oil Co., 412 F.3d 501, 513 (3d Cir. 2005).

**A.  Opinion on Product Identification**

Garlock denies that the incident thin wall tubing was produced by it. In this regard, the incident tubing does not bear any identification marks or other indicia that it is Garlock's product. Most notably, the incident pipe does not have the distinctive green paint that Garlock uses on its product.

Plaintiff, however, has produced substantial circumstantial evidence that the product in question was manufactured by Garlock. In addition, Plaintiff seeks to have Mr. Sokalski

opine that the incident pipe is indeed Garlock thin wall tubing.  Mr. Sokalski's opinion is based upon his comparison of an exemplar of Garlock thin wall tubing with the incident pipe. Mr. Sokalski's product identification opinion, however, suffers from two fundamental defects.

First, his opinion does not appear to be based upon any scientific, technical or other specialized knowledge.  He simply indicates that he found the dimensions and arrangements of control loops on the exemplar and incident tubing to be consistent.  The jury will be able to make its own visual examination of the evidence presented, and its determination of this matter in issue would not appear to be facilitated by an "opinion" of an otherwise highly-credentialed witness.

Second, and more importantly, Mr. Sokalski's product identification opinion is not based upon sufficient facts and data.  During his deposition, he acknowledged that he did not examine an exemplar from any Garlock competitor.  (Sokalski Dep. at 130-31, included as Exhibit "B" to Plaintiffs' Exhibits in opposition to Garlock's Motion in Limine, Dkt. Entry 148-4, at 35.)  He also acknowledged that he did not consider drawings of thin wall tubing produced by Garlock's competitors.  Thus, he is not in a position to differentiate between Garlock's product and its competitors.  Accordingly, Mr. Sokalski will be precluded from expressing an opinion on product identification.

**B.  Opinion on Defective Design**

In denying summary judgment on Plaintiff's claims of negligent design as well as

defective design within the parameters established by § 402A of the Restatement (Second) of Torts and the implied warranty of merchantability, this Court believed that Mr. Sokalski had posited an alternative safer design for steel thin wall tubing used in the industrial roofing industry. Plaintiff, however, in responding to Garlock's <u>Daubert</u> motion, does not attempt to defend any alternative, safer design of the product in question. Instead, Plaintiff limits her discussion on design defect to the matter of adequate warnings. Moreover, during the final pretrial conference conducted in this matter on February 1, 2008, Plaintiff's counsel confirmed that an alternative, safer design would not be presented to the jury. Accordingly, Garlock's motion to preclude Mr. Sokalski from expressing any opinion with respect to design defect will be granted.

### C. **Opinion on Manufacturing Defect**

Plaintiff seeks recovery on a theory that there was a defect in the manufacturing process that resulted in the incident tubing lacking the strength to withstand the explosion that resulted in Mr. McAndrew's injuries. This claim rests upon Mr. Sokalski's opinion that the incident tubing "was not fully annealed and failed prematurely along the seam weld." (Sokalski Report at 11.)  This opinion, in turn, is premised upon hydrostatic pressure testing conducted on an exemplar Garlock product. The dispositive question here is whether the hydrostatic testing is an appropriate means for determining whether the incident tubing was either insufficiently annealed or inadequately welded.

As explained in this Court's ruling on Garlock's summary judgment motion, Garlock purchases thin wall tubing from a steel manufacturer. (March 6, 2007 Memorandum Opinion Dkt. Entry 101, at 5.) The tubing is "cold rolled electric weld tubing," meaning that it is "manufactured by rolling it into a tubular section and then welding the seem." (Id.) The tubing has an outside diameter of 1.5 inches, and the wall of the tubing has a thickness of .065 inch. (Id. at 5-6.) Plaintiff has not presented any evidence as to the precise design, manufacture and material specifications of the tubing, or whether the tubing must be "fully annealed." (Id. at 6.) It is clear, however, that the tubing is not intended to serve as a pressure vessel.

Because Plaintiff failed to adduce evidence of the manufacturing process employed by the steel producer or the design specifications for the Garlock tubing, this Court ruled on Garlock's summary judgment motion that Plaintiff could not pursue a claim under § 402A of the Restatement (Second) of Torts that the incident tubing deviated from its intended design and specifications. (Id. at 23-24.) This Court also ruled, however, that Plaintiff could pursue a claim that there is a defect in manufacture based upon the malfunction theory of products liability.[3] (Id. at 25-27.) In arriving at this conclusion, this Court considered Mr. Sokalski's

---

[3] The malfunction theory of products liability law "relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes." Rogers v. Johnson & Johnson Prods., Inc., 565 A.2d 751, 754 (Pa. 1989). The malfunction theory, however, does not relieve plaintiff of the burden of

Case 3:03-cv-00872-TIV   Document 162   Filed 02/07/08   Page 9 of 19

opinion that the thin wall tubing was not stress relieved and failed prematurely at the weld seam. This Court also relied upon this opinion in denying summary judgment on the claim of negligence in manufacturing the tubing.

The hydrostatic testing that forms the premise for Mr. Sokalski's conclusions consisted of pumping water into an exemplar Garlock steel tube until it burst. Mr. Sokalski measured a pressure of 5,830 psig when the wall of the tube burst. He also determined that the exemplar tube did not tear along the weld seam. Instead, it expanded approximately 15% in circumference around the burst location. Mr. Sokalski compared these results with measurements taken of the incident steel tubing. He determined that the incident tubing had expanded only 1.8 percent in circumference before tearing along the weld seam during the explosion. Based upon these observations, he inferred that a properly manufactured tube should be able to withstand pressure of up to 5,830 psig. He concluded that the differential in circumferential displacement "appears to add confirmation that the gas explosion which caused the incident tube to rupture was at a much lower pressure than hydrostatic rupture of 5,830 psig." (Sokalski Aff., Dkt. Entry 148-5 at ¶ 7.) He also infers that, because the exemplar tubing did not rupture along a weld seam, the welding on the

---

proving a defect in the product at the time of sale. Ducko v. Chrysler Motors Corp., 639 A.2d 1204, 1206 (Pa. Super. Ct. 1994). Instead, it provides a means by which the existence of a defective condition may be inferred.

incident tubing must have been defective.

Garlock criticizes Mr. Sokalski's opinion because it presumes that pressures exerted during hydrostatic testing are equivalent to those that develop during an explosion. In support of its position, Garlock has submitted the affidavit of Lester Engel, Dkt. Entry 131, who explains that "[t]he loading rate of the forces involved in an explosion versus those involved in a hydrostatic burst are vastly different." Mr. Engel goes on to explain:

> In an explosion, the speed of the force generation is much more rapid. The forces generated in milliseconds cause 'hoop stresses' due to the quick loading rate and which overwhelm the pipe's ductile and tensile strength and result in the type of metal failure shown in the incident pipe . . . where the pipe is radically deformed and flattened.
>
> In contrast, the loading rate of a hydrostatic burst test as conducted by Mr. Sokalski is completely different and occurs at a much slower rate. Gradually and incrementally increasing the pressure inside the pipe allows for it to expand to a greater degree - the pipes ductility comes in to play and the pipe stretches to its maximum expansion before metal failure occurs. The pipe has time to deform prior to failure.

(Id. at 2 - 3.) Mr. Engel cites in support of his observations ASM Handbook Vol. 8, "Mechanical Testing Evaluation," Chapter "High Strain Rate Testing," p. 425, October, 2000. (Id. at 3 - 4.)

During his deposition, Mr. Sokalski acknowledged that he had not made an estimate of the pressure inside the tubing at the time of the explosion. He explained that he believed that the pressure was well below 5,830 psig because the circumferential displacement of the incident tubing did not approach the 15% he obtained in hydrostatic testing. His

10

deposition testimony indicated that he had assumed that equivalent displacement would be caused during an explosion, but provided no foundation for the assumption. Notably, the affidavit of Mr. Sokalski submitted in reply to the motion in limine never addresses differences in the speed of the force generated in an explosion versus hydrostatic testing. Mr. Sokalski does not dispute the fact that the rapidity of the generation of forces in an explosion overcomes the tubing's ductile and tensile strength, as explained by Mr. Engel. Instead, Mr. Sokalski adheres to his assumption "that pipe expansion will occur the same in a hydraulic test as in an explosion." (Sokalski Dep. at 161.)

Daubert requires more than the *ipse dixit* of the expert. See General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). There must be a solid foundation for the assumption, and none has been articulated by Mr. Sokalski in this case.

According to Mr. Engel, "Mr. Sokalski's opinion also ignores the fact that explosive forces are directional. That is, the hoop stresses that result are directed at the burst site, they are not uniform within the pipe as they are in a hydrostatic pressurization." (Engel Affidavit, Dkt. Entry 131, at 3.) Mr. Engel explains that the "directional property of explosive forces determine where the metal failure will occur: failures occur where the explosion is directed, not necessarily where the pipe is weakest." (Id.) Mr. Sokalski's reply affidavit, Dkt. Entry 148-5, does not address the matter of the directional nature of explosive forces. Instead, he merely asserts that hydrostatic pressurization is a recognized means of testing

pressure containing vessels, citing ASME Boiler Pressure Vessel Code (UG-20-23, UG-98-101), the Pa. National Board - Pressure Vessel Code, and ANSI B16.5 Code.

As pointed out in the Engel rebuttal affidavit, Dkt. Entry 150, these standards concern vessels holding contents under pressure, such as boilers or propane tanks, but are not standards to determine a vessel's ability to contain an explosion.  Mr. Sokalski does not cite any standard that supports his assumption that hydrostatic pressurization is an acceptable methodology for determining the ability of a vessel to contain an explosion.

Mr. Sokalski's opinion also suffers from reliance upon another unsubstantiated assumption.  He opines that the pressure caused by the explosion must have been less than 5,830 psig because Mr. Engel had determined that the force necessary to push a 20-inch long asphalt plug inside the tubing was 2,298 psi.  Mr. Sokalski suggests that the explosive force was less than 2,298 psig because the asphalt plug was not propelled from the tubing.  This opinion ignores the fact that explosive forces are omni-directional, and that push testing in a linear direction cannot be equated with the effects of an explosion. Moreover, as explained in the Engel rebuttal affidavit, Dkt. Entry 150, materials submitted with Mr. Sokalski's reply affidavit actually support a conclusion that the pressure inside the tubing at the moment of explosion exceeded 10,000 psi.[4]

---

[4]Mr. Sokalski's handwritten calculations on excerpts from a chapter intended to address "Gas Explosions in Vessels, Pipes, Channels and Tunnels," (Dkt. Entry 148-6, at 3-9), recognize that pressures 50 times greater than the initial pressure "have been

Mr. Sokalski's extrapolation of the results of hydrostatic testing to opine on product defect in the context of a dynamic failure of a valve was rejected recently in the case of <u>Meadows v. Anchor Longwall and Rebuild, Inc.</u>, Civil Action No. 02-2062 (W.D. Pa. May 3, 2007).[5] In <u>Meadows</u>, a shut off valve shot away from its assembly, striking Mr. Meadows in the face while he was engaged in manually pressurizing some equipment.  Mr. Sokalski opined in <u>Meadows</u> "that the valve 'exploded' because when Anchor Longwall refurbished [the equipment] it omitted a check valve that would have relieved the over-pressurization." (<u>Id</u>. at 3.)  In arriving at his conclusions, Sokalski had undertaken hydrostatic testing of exemplar valves.  In excluding his opinions, the Court observed that Sokalski's "pressure tests were not actually exemplary since he was increasing the pressure slowly, as opposed to the dynamic spike he opines occurred at the time of the accident." (<u>Id</u>. at 7-8.) The Court also noted Mr. Sokalski's failure to "point to any reference material, publication or

---

measured when transition to detonation has occurred." (<u>Id. at 7</u>.)  Mr. Sokalski purported to undertake the calculations described in this chapter, arriving at a conclusion that the maximum internal pressure at the moment of detonation would have been 4,820 psig, still below his hydrostatic testing maximum of 5,830 psig.  As explained in the Engel rebuttal affidavit, however, Mr. Sokalski's calculations failed to account for the increase in pressure caused by the application of heat.  (Dkt. Entry 150 at 6.)  Application of the "Ideal Gas Law," which is not taken into account in Mr. Sokalski's calculation, produces a maximum internal pressure at the moment of detonation of 10,578 psi, assuming that 50 times the initial pressure is the maximum.  (<u>Id. at 7</u>.)

[5]A copy of the Court's Opinion and Order in the <u>Meadows</u> case is included as Exhibit "C" to the Heyerdahl Affidavit, Dkt. Entry 141.

literature that described the failure scenario he presented." In this regard, Mr. Sokalski had not presented any "evidence that his theory or methodology has been subjected to peer review or that it is generally accepted." (Id. at 8.) In addition to the absence of a reliable methodology underlying Mr. Sokalski's opinions, the Court concluded that there was "absolutely no 'fit' between Sokalski's tests and the facts." (Id. at 11.) That is, Mr. Sokalski had not demonstrated that the testing he conducted was connected to the questions at issue in the case. The Court observed that the hydrostatic testing did not approximate the dynamic forces at play at the time of the accident, concluding that "[g]iven the lack of resemblance Sokalski's tests have to the events in the mine, it is difficult to say how, if at all, these tests could assist the jury in determining what caused the accident." (Id. at 12.)

     Mr. Sokalski's approach in this case suffers from the same fatal defects found to be present in Meadows. None of the factors identified in Daubert, such as a method that consists of a testable hypothesis that has been subjected to peer review, the existence and maintenance of standards controlling the methodology, and the general acceptance of the methodology in the context of the incident giving rise to this lawsuit, is present here. Moreover, Plaintiff has not presented evidence of other factors pertinent in assessing the admissibility of expert opinions expressed in technical fields such as engineering, like design and performance standards established by the federal government or independent standards organizations, relevant literature, evidence of industry practice, and product

design and accident history.  See Milanowicz v. Raymond Corp., 148 F. Supp. 2d 525, 536 (D. N.J. 2001).

In summary, Mr. Sokalski's opinion that the incident tubing was either insufficiently annealed or inadequately welded does not rest upon sufficient facts and data, is not the product of a reliable methodology, and the methodology employed does not have the requisite connection to the facts of this case.[6]  Accordingly, Mr. Sokalski will be precluded from expressing any opinion as to a defect in manufacture.[7]

**D.  Opinions on Warnings**

Plaintiff claims that Garlock was negligent and its product was in a defective condition because it failed to warn of the explosion hazard posed by the melt out procedure and did not instruct users to wear appropriate personal protective equipment, such as a face shield, when conducting the melt out procedure.  In denying summary judgment on the warning claims, this Court found that Mr. Sokalski's opinions were adequately premised

---

[6] Although expressing an opinion that the incident tubing was not sufficiently annealed, i.e. stress relieved, Mr. Sokalski testified at his deposition that he did not know whether annealing increased or decreased the burst pressure that could be withstood by the tubing. (Sokalski Dep. at 170.)  Mr. Engel, in his initial affidavit, Dkt. Entry 131, stated that annealing has no significant effect on where a pipe will fail when exposed to an internal explosion, and Mr. Sokalski did not address this assertion in his reply affidavit.  Mr. Sokalski's failure to explain his opinion that the incident tubing was not properly annealed provides yet another reason for excluding it.

[7] It would appear that exclusion of Mr. Sokalski's opinion precludes Plaintiff from pursuing liability based upon a defect in manufacture, whether presented under negligence or § 402A of the Restatement (Second) of Torts.

upon specialized knowledge and sufficiently connected to the facts of this case to create a triable question for the jury.

In addressing the motion in limine, this Court finds no need to re-examine its prior determination that Mr. Sokalski possesses adequate qualifications to express opinions with respect to the adequacy of product use information.  Moreover, this Court remains convinced that a jury could find the product defective because Garlock failed to warn of the severity of the hazard posed to users during the melt out procedure.  Accordingly, Mr. Sokalski will be permitted to express his opinion with respect to the necessity of warning users of the explosion hazard created during the melt out process.

A contrary conclusion, however, is dictated with respect to the adequacy of warnings concerning personal protective equipment.  In ruling on the summary judgment motion, this Court observed that Plaintiff will be required to supply appropriate evidence that use of a full face shield and fire resistant clothing could have prevented or minimized Mr. McAndrew's injuries.  (March 6, 2007 Memorandum Opinion, Dkt. Entry 101, at 36-37 n.12.)  At the final pretrial conference conducted in this matter, Plaintiff informed the Court that such evidence will not be presented.  Accordingly, because Plaintiff is unable to show that use of personal protective equipment, like a face shield, would have prevented the type of injuries sustained by Mr. McAndrew, Plaintiff will not be permitted to have Mr. Sokalski opine as to the necessity of instructing users on the matter of personal protective equipment.

16

**III. CONCLUSION**

     For the foregoing reasons, Garlock's motion in limine as to Mr. Sokalski's testimony will be granted with respect to opinions on product identification as well as manufacturing and design defect. The motion, however, will be denied as to Mr. Sokalski's opinion concerning the absence of a warning concerning the explosion hazard posed by the melt out procedure. An appropriate Order follows.

                                                            **s/ Thomas I. Vanaskie**
                                                            Thomas I. Vanaskie
                                                            United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOROTHY McANDREW, Individually** | : | |
| **and as the Administratrix of the Estate** | : | |
| **of RAYMOND MCANDREW,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **3:CV-03-0872** |
| | : | **(JUDGE VANASKIE)** |
| **GARLOCK EQUIPMENT CO.,** | : | |
| **BRAUNER EQUIPMENT COMPANY** | : | |
| **Defendants** | : | |

## ORDER

 **NOW, THIS 7TH DAY OF FEBRUARY, 2008,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. Defendant Garlock Equipment Company's Motion in Limine to Strike the Testimony of Mark Sokalski (Dkt. Entry 128) is granted in part.  Mr. Sokalski is precluded from testifying as to product identification and manufacturing defect, whether in support of a claim of negligent manufacture or defective condition premised upon malfunction.  Mr. Sokalski is also precluded from testifying as to any defect in design.

2. Garlock's motion to preclude Mr. Sokalski from testifying regarding warnings or instructions is granted as to personal protective equipment, but denied as to opinions

concerning an explosion hazard.

                                                  **s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge